MORRIS W. and ANNELIESE E. HADDOCK, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Haddock v. Commissioner
Docket No. 38699-84.
United States Tax Court
T.C. Memo 1986-476; 1986 Tax Ct. Memo LEXIS 132; 52 T.C.M. (CCH) 638; T.C.M. (RIA) 86476; September 24, 1986. Morris W. Haddock and Anneliese E. Haddock, pro se. Bernard P. Coniff, for the respondent. SWIFT
MEMORANDUM FINDINGS OF FACT AND OPINION SWIFT, Judge: Respondent determined deficiencies in petitioners' Federal income tax liabilities as follows: Year
Deficiencies
1981
$1,770.00
1982
4,255.50
The primary issue for decision is whether *133 petitioner Morris W. Haddock's expenses incurred in connection with the construction of a log home in North Carolina are deductible business expenses. FINDINGS OF FACT Some of the facts have been stipulated and are so found. During the years 1955 through 1980, petitioner, Morris W. Haddock ("Morris"), was employed as a special agent of the Federal Bureau of Investigation ("FBI"). In the late 1960's, Morris was transferred to Miami, Florida, and he continued to work out of the Miami office of the FBI until his retirement in 1980. Soon after his transfer to Miami, petitioners began taking two-week summer vacations each year to North Carolina. Other FBI agents and friends of petitioners from Florida also vacationed in North Carolina. In the early 1970's, Morris and another individual formed Appalachian Trail Acres, a partnership, to invest in land in North Carolina. The partnership purchased 100 acres of land in Madison County, North Carolina. In 1977, Morris purchased from the partnership for $10,000, a five-acre parcel of land the partnership previously had purchased. In 1980, at the age of 51, Morris retired from the FBI. During 1980, Morris considered various employment *134 opportunities. In March of 1981, Morris entered into an agreement to purchase a kit for the construction of a log home from Lincoln Log Homes, Inc., a company based in Kannapolis, North Carolina. The purchase price for the kit was $15,837, with a $3,000 down payment required. Morris decided to build the log home on his five-acre parcel of land in Madison County, North Carolina. Also in March of 1981, Morris signed an agreement with Lincoln Log Homes, Inc., authorizing him to be a dealer or seller of kits for the manufacture of Lincoln log homes. The agreement specified four counties in North Carolina, including Madison County, in which Morris was authorized to sell Lincoln log homes. The agreement is very general in its terms and a number of key provisions thereof are extremely vague. For example, paragraph 10 provides, in part, with respect to termination of Morris' status as a dealer: 10. Causes For Termination
This Agreement may be terminated by the Company or Distributor upon thirty (30) days written notice from any of the following sources: * * * c. In the event Dealer fails to purchase and pay for the initial purchase within twenty-one (21) days of the signing *135 of this Agreement. * * * The agreement does not describe what the "initial purchase" is that it has reference to in paragraph 10(c). From testimony in this case, it appears that the words "initial purchase" in the agreement refer to the purchase by Morris of the log home kit. Throughout the balance of 1981 and most of 1982, Morris worked very hard and very long hours personally constructing the log home on his property. He completed it in late 1982. During construction, Morris lived in North Carolina. During the first few months of construction, he rented and lived in a home near the property. Later in 1981 and in early 1982, Morris slept in a large tent that was near the construction site since he was working such long hours on the home and since it was more convenient than staying elsewhere. Sometime in 1982, when the log home was sufficiently completed, Morris moved into the home and stayed there until it was completed. During most of the approximate 20-month construction period of the log home, petitioner Anneliese E. Haddock resided at petitioners' home in South Palm Beach, Florida, although she made a few trips to North Carolina during that period. Since completing *136 construction of the log home through the present time, petitioners have maintained their permanent residence in South Palm Beach, Florida, but they spend most of the spring, summer, and fall of each year in Madison County, North Carolina, living in the log home Morris built. In March or April of 1981, Morris attended a two- or three-day training session conducted by Lincoln Log Homes, Inc., for new dealers representing the company. From March of 1981 through early 1983, Morris performed various acts as a dealer for Lincoln Log Homes, Inc. He obtained business cards reflecting his status as a dealer thereof. He advertised the log home kits in a number of local newspapers. He advertised the kits and his status as a dealer to an association of former FBI agents. He responded to a number of inquiries from potential purchasers about the log homes, and a number of potential purchasers were taken to inspect the log home Morris was constructing in an effort to interest them in buying a log home kit. At no time during 1981, 1982, or 1983 did Morris attempt to sell the log home he was constructing and it was never his intention to sell it. Rather, after completion, Morris intended *137 to use the log home he was constructing as a personal residence during the months each year he and his wife spend in North Carolina. Early in 1983 shortly after completion of the log home, Morris' dealer agreement with Lincoln Log Homes, Inc., was terminated. Since then up until the present time, the log home has been used exclusively as petitioners' personal residence during the months each year they spend in North Carolina. During 1981, 1982, and 1983, when Morris was affiliated with Lincoln Log Homes, Inc., he made no sales and he received no fees, commissions, or other payments with respect to the sale of log home kits. In 1981 and 1982, although Morris spent almost all of his time in North Carolina, he did make two automobile trips each year to Florida for short visits. On their 1981 and 1982 joint Federal income tax returns, petitioners treated Morris as engaged in the business of selling Lincoln log homes and petitioners treated the construction by Morris of the log home on their five-acre parcel of land in Madison County, North Carolina, as part of Morris' business of selling log homes. Accordingly, all costs petitioners attributed to that business were treated as deductible *138 business expenses. The material costs of the log home were capitalized, and depreciation was claimed with respect to the capitalized costs since the log home was treated as property of the business. An investment tax credit also was claimed in 1982 with respect to a portion of the capitalized cost of the log home. Upon audit, respondent determined that Morris was not engaged in the business of selling log homes or log home kits and that the log home he constructed was nonbusiness, personal property (i.e., a personal residence). Accordingly, respondent disallowed the following items claimed on petitioners' 1981 and 1982 tax returns: 1981
Items Relating Generally
to the Alleged Business
Advertising
$ 72.04
Dues and publication
36.55
Interest
18.00
Laundry and cleaning
14.00
Office supplies
103.57
Repairs
21.00
Travel
1,171.85
Utilities and telephone
347.68
Items Relating to Construction of Log Home
Depreciation
3,392.75
Truck expenses
2,857.29
Freight
681.00
Insurance
202.00
Total Disallowance for 1981
$ 8,917.73
1982
Items Relating Generally
to Alleged Business
Advertising
$ 209.16
Dues and publication
15.00
Interest
18.00
Travel
139.48
Utilities and telephone
355.13
Items Relating to Construction of Log Home
Depreciation
$ 6,683.62
Truck expenses
5,038.87
Insurance
220.00
Total Disallowance for 1982
$12,679.26
Investment Tax Credit Disallowed
$ 510.50
*139 OPINION In order to constitute a trade or business, an activity must be engaged in with an "actual and honest objective of making a profit." Porreca v. Commissioner,86 T.C. 821, 843-844 (1986); Dreicer v. Commissioner,78 T.C. 642, 646 (1982), affd. without opinion 702 F.2d 1205 (D.C. Cir. 1983). A profit objective also is required to deduct expenses under section 212(1) or (2). Capek v. Commissioner,86 T.C. 14 (1986). A reasonable expectation of profit is not required; however, the taxpayer must have the actual intent and objective of realizing a profit. Brannen v. Commissioner,78 T.C. 471, 506 (1982), affd. 722 F.2d 695 (11th Cir. 1984). Whether a taxpayer possesses the required profit motive is a fact question and must be resolved on the basis of all the evidence in the case. Brannen v. Commissioner,722 F.2d 695, 704 (11th Cir. 1984); Porreca v. Commissioner,supra. Petitioners herein have the burden of proof with respect to this issue. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a), Tax Court Rules of Practice *140 and Procedure.
Treasury Regulations under section 183 provide a list of some of the factors that are considered in determining whether an activity is engaged in for profit. They provide generally as follows: (1) The manner in which the taxpayer carries on the activity; (2) the expertise of the taxpayer or his advisors; (3) the time and effort expended by the taxpayer in carrying on the activity; (4) the expectation that assets used in the activity may appreciate in value; (5) the success of the taxpayer in carrying on other similar or dissimilar activities; (6) the taxpayer's history of income or losses with respect to the activity; (7) the amount of profits, if any, which are earned; (8) the financial status of the taxpayer; and (9) any elements indicating personal pleasure or recreation. Sec. 1.183-2(b), Income Tax Regs.; Capek v. Commissioner,86 T.C. 14, 37 (1986). Based upon the above criteria, it is quite clear that Morris did not engage in the selling of log homes or log home kits for profit in 1981 and 1982. He did not make a single sale. He received no income for the alleged business, and he undertook only a minimal amount of advertising and promotional *141 work. Essentially all of Morris' time and effort in 1981 and 1982 relating to log homes was expended in the construction of a single log home on his five-acre parcel of land in Madison County, North Carolina. He never intended to sell that log home or to offer it for sale as part of his business. Rather, he intended to use the log home as his second residence during the many months he and his wife spend each year in North Carolina. The log home that Morris constructed in North Carolina as a personal residence for his wife and himself is not converted to business property merely because Morris decided to look for work in North Carolina or because he signed on with Lincoln Log Homes, Inc. To the contrary, when most people retire and accept or anticipate employment at a new location, they must provide for themselves living quarters at the new location. The fact that the acquisition of new living quarters may be precipitated by retirement, a change of jobs, or a search for a new job, does not make the living quarters at the new location business property. The result is no different where the taxpayer maintains his primary residence at a prior location and merely uses his new living *142 quarters as a secondary residence. Petitioners herein, of course, contend that the log home was built not only as an intended second residence for their use but also as a "model home" to be used as an integral part of their business. Petitioners are not assisted, however, by labeling the log home as a "model home" or by the fact that they may have been required to purchase the log home as part of the agreement under which Morris became a dealer for Lincoln Log Homes, Inc. The question herein turns on the use of the log home and on the reasonably expected use thereof. In that regard, this case is similar to Parsons v. Commissioner,T.C. Memo. 1984-333. In that case, the taxpayers purchased a modular home to be used as their personal residence. As part of the purchase, they also agreed to allow the home to be used as a "model" and to be shown to prospective purchasers of other modular homes. The conclusion was reached therein that the personal residence of the taxpayer was not "part of a larger integrated real estate trade or business." Parsons v. Commissioner,48 T.C.M. 401, 405, 53 P-H Memo T.C. par. 84,333, at 1294-84 (1984). That conclusion *143 is applicable to the facts of this case. Petitioner Morris W. Haddock's activities in 1981 and 1982 with respect to log homes and log home kits related primarily to the construction of a personal residence (see section 262) and did not constitute the conduct of a trade or business. Respondent's adjustments are sustained. Decision will be entered for the respondent.