830 F.2d 110
 87-2 USTC P 9475
 MODERN AMERICAN LIFE INSURANCE COMPANY, Successor in
Interest to Dynamic Security Life Insurance
Company, Appellee/Cross-Appellant,
v.
COMMISSIONER OF INTERNAL REVENUE SERVICE, Appellant/Cross-Appellee.
 Nos. 86-1636, 86-1779.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Nov. 12, 1986.
Decided Aug. 14, 1987.
 
 1
 J. Michael Wylie and Raymond P. Turner, Moore & Peterson, Dallas, Tex., for appellee/cross-appellant.
 
 
 2
 Gary Allen and Nancy G. Morgan, Tax Div., Dept. of Justice, Jean Owens, Acting Chief Counsel, I.R.S., Washington, D.C., for appellant/cross-appellee.
 
 
 3
 Before McMILLIAN and ARNOLD, Circuit Judges, and ARNOLD,* District Judge.
 
 
 4
 MORRIS SHEPPARD ARNOLD, District Judge.
 
 I.
 
 5
 Taxpayer, a Missouri corporation, is the surviving corporation in a merger with Dynamic Security Life Insurance Company (Dynamic).[1] On December 29, 1978, Dynamic entered into a reinsurance agreement with Ozark National Life Insurance Company (Ozark) with respect to a portion of the latter's policies. Under that agreement, which was denominated a "modified coinsurance agreement,"[2] Dynamic, as the reinsurer, assumed 9.3 percent of Ozark's liabilities on an existing block of whole life insurance policies for the period those policies remained in force and would thereafter be entitled to 9.3 percent of the future net gain from operations attributable to the policies in question. The agreement further provided that Dynamic would pay Ozark an amount, designated as a "ceding commission," of $450,000 as consideration for the rights acquired by it under the transaction. The effective date of the agreement was December 31, 1978, and the ceding commission was paid on December 29, 1978.
 
 
 6
 In accordance with the nature of the agreement as a modified coinsurance contract, Ozark remained directly liable to the policyholders on the reinsured business. The policyholders were not notified of the reinsurance agreement, and Ozark continued to collect the premiums and service the policies. The reserves for the policies continued to be held exclusively by Ozark.
 
 
 7
 On its federal income tax return for 1978, Dynamic deducted the $450,000 payment under "other deductions" as "modified coinsurance expense." Upon examination, the Commissioner determined that no portion of that payment was deductible in 1978, but that, instead, the payment should be amortized, beginning in 1979, over the estimated 10-year life of the block of policies in question. Accordingly, the Commissioner determined a deficiency in taxpayer's federal income taxes for 1978 in the amount of $153,842.
 
 
 8
 Taxpayer thereupon petitioned the Tax Court for a redetermination of the deficiency. The parties submitted cross-motions for summary judgment on the issue of the proper treatment of the ceding commission. The Tax Court granted summary judgment to taxpayer, holding that the ceding commission was currently deductible. The Tax Court recognized that such a commission would have to be amortized over the estimated life of the policies in the case of an assumption reinsurance transaction, but, relying on its earlier opinion in Beneficial Life Insurance Co. v. Commissioner, 79 T.C. 627 (1982), ruled that a ceding commission paid to the reinsured in an indemnity reinsurance transaction may be deducted in full in the year of payment as a return premium under Section 809(c)(1) of the Internal Revenue Code of 1954.
 
 
 9
 The Commissioner now appeals. We reverse.
 
 II.
 
 10
 We note that while Beneficial Life did involve both conventional and modified coinsurance agreements, the court analyzed each agreement as if it were a conventional coinsurance agreement. See Beneficial Life, 79 T.C. at 634. This was proper because the parties to the modified coinsurance agreements there elected, pursuant to 26 U.S.C. Sec. 820, to have their agreements treated, for tax purposes, as conventional coinsurance agreements. Id. The parties in the instant case, however, consented to no such election and this difference may be significant. A reinsuring company in a conventional coinsurance arrangement assumes liability on the policies being reinsured and sets up reserves to cover these acquired risks; but in a modified coinsurance arrangement the ceding company retains the assets attributable to the transaction and continues to carry the reserves on its books. The tax consequences are that the reinsurer in a conventional coinsurance agreement must, pursuant to 26 U.S.C. Sec. 809(c)(1), include in income the assets actually or constructively transferred from the ceding company to the reinsuring company,[3] and can, pursuant to 809(d)(2), deduct in full its increase in required reserves. Beneficial Life holds that because the consideration or allowance paid by the reinsurer to the ceding company for the reinsurance business ceded was simply being offset or netted by the ceding company against the assets transferred to the reinsurer to cover the reserves, the disparity between the amount of reserves assumed and actual consideration received from the ceding company should be treated as a payment back to the ceding company, and, pursuant to Section 809(c)(1), such amount could be deducted as a "return premium." This amount represents the present value of the acquired policies. The facts of Beneficial Life are therefore not before us, and thus we express no opinion as to the correctness of the result in that case.
 
 III.
 
 11
 The effect of the Tax Court's holding below is to grant taxpayer a current deduction for the cost of acquiring a future income stream equal to 9.3 percent of Ozark's future earnings on these policies. Stripped of technicalities, the question on appeal reduces to whether the taxpayer may treat the acquisition of that future income stream as generating an immediate deduction, or whether, as in the case of assumption reinsurance, such amounts should be amortized over the estimated life of the future income stream acquired as a result of that expenditure.
 
 
 12
 It is, of course, a fundamental proposition of the tax law that expenses incurred in acquiring an asset or economic interest, benefit or advantage--whether tangible or intangible--with an income-producing life extending substantially beyond the current taxable year may not be expensed in the year of payment but must be depreciated or amortized over its useful life.[4] See 26 U.S.C. Sec. 263; Commissioner v. Idaho Power Co., 418 U.S. 1, 12, 94 S.Ct. 2757, 2764, 41 L.Ed.2d 535 (1974); United States v. Mississippi Chemical Corp., 405 U.S. 298, 309, 92 S.Ct. 908, 914, 31 L.Ed.2d 217 (1972); Commissioner v. Lincoln Savings & Loan Assn., 403 U.S. 345, 354, 91 S.Ct. 1893, 1899, 29 L.Ed.2d 519 (1971); Woodward v. Commissioner, 397 U.S. 572, 574-575, 90 S.Ct. 1302, 1304-05, 25 L.Ed.2d 577 (1970); United States v. Akin, 248 F.2d 742, 744 (10th Cir.1957); General Bancshares Corp. v. Commissioner, 326 F.2d 712 (8th Cir.1964), cert. denied, 379 U.S. 832, 85 S.Ct. 62, 13 L.Ed.2d 40 (1964); Darlington-Hartsville Coca-Cola Bottling Co. v. United States, 393 F.2d 494, 496 (4th Cir.1968), cert. denied, 393 U.S. 962, 89 S.Ct. 402, 21 L.Ed.2d 376 (1968) see generally 1 B. Bittker, Federal Income Taxation of Income, Estates and Gifts, para. 20.4 (1981). It is apparent that taxpayer, in paying $450,000 in return for the right to a percentage of the future earnings on the reinsured policies, acquired an economic benefit that it fully expected to contribute to its income in future periods. Accordingly, unless the Tax Court was correct in deciding that the provisions of the Life Insurance Company Income Tax Act of 1959 serve to overturn this fundamental principle of taxation, taxpayer is clearly precluded from deducting the $450,000 payment in 1978, and must instead amortize the payment over the reasonably estimated life of the block of policies.[5]
 
 
 13
 As a life insurance company, taxpayer is taxable under Sections 801 through 820 of the Internal Revenue Code of 1954 (26 U.S.C.) as added to and amended by Section 2 of the Life Insurance Company Income Tax Act of 1959, Pub.L. No. 86-69, 73 Stat. 112.[6] Under that Act, life insurance companies are taxed on their "gain from operations." "Gain from operations" is a broad category encompassing total net income from all sources. Essentially, the "gain from operations" equals the amount by which the sum of (1) the company's share of investment income, (2) the net capital gain (if any), and (3) gross premiums and other consideration on insurance and annuity contracts less return premiums and premiums and other consideration arising under reinsurance ceded, exceeds certain deductions, including death benefits paid, net increases in reserves, and, of course, the other expenses generally allowed to all taxpayers. Section 809(a), (b)(1), (c) and (d).
 
 
 14
 We are concerned in this case only with the computation of the third category of gain as it is affected by the payment of a "ceding commission" by taxpayer (the reinsurer) to Ozark (the reinsured or ceding company). Regarding such computation, the tax court, adhering to its decision in Beneficial Life, held that taxpayer was entitled to reduce its gross amount of premium income for 1978 under the provisions of Section 809(c)(1) by the $450,000 payment to Ozark, notwithstanding the fact that the payment was made to acquire a valuable economic interest with an estimated 10-year life, because that amount constituted "consideration returned."
 
 
 15
 Section 809(c)(1) provides that the following items shall be taken into account in determining premium income:
 
 
 16
 The gross amount of premiums and other consideration (including * * * consideration in respect of assuming liabilities under contracts not issued by the taxpayer) on insurance and annuity contracts * * *; less return premiums, and premiums and other consideration arising out of reinsurance ceded. Except in the case of amounts of premiums or other consideration returned to another life insurance company in respect of reinsurance ceded, amounts returned where the amount is not fixed in the contract but depends on the experience of the company or the discretion of management shall not be included in return premiums.[7]
 
 
 17
 Reading this statute in a vacuum without regard to its function and apparent legislative purpose and without regard to the tax principles applicable to all other taxpayers generally, these provisions could, no doubt, be literally construed as allowing a reduction for all "consideration" paid in connection with an indemnity reinsurance transaction. Under such a reading, it seemingly would make no difference who made the payment or the purpose therefor: The mere fact that it was paid under an indemnity reinsurance agreement would serve to render all other tax considerations irrelevant.
 
 
 18
 A closer, contextual examination of the statute, however, indicates that no intent to allow an immediate deduction for such ceding commissions need be, or should be, attributed to Congress. The focus of Section 809(c)(1) is not on deductions, per se, but rather on the determination of premium income. Thus it provides, in the first instance, for taking the "gross amount of premiums and other consideration" into account and then for eliminating from such "gross premiums" two items, namely, "return premiums" and "premiums and other consideration arising out of reinsurance ceded." The juxtaposition of these two items as proper subtractions from gross premiums provides a clear indication of the meaning and purpose of this provision. It serves simply to eliminate from the "gross amount of premiums and other consideration" those portions of premiums received which do not, in the end, "belong" to the company in question, but which must either be returned to the policyholder[8] or turned over to or shared with another company under an indemnity reinsurance agreement. The reinsurer in a transaction such as that involved here, in which it simply pays a sum to the reinsured in exchange for future benefits, would not include anything in gross premiums with respect to the transaction in question at the time the payment is made. Consequently, the payment made by the reinsurer clearly does not reflect an appropriate "reduction" of amounts otherwise included in its income and, hence, there is plainly no reason for allowing such an offset or for reading Section 809(c)(1) as providing for such an offset.
 
 
 19
 Even if the statute were construed to allow reductions where no income existed from which to offset such reductions, the $450,000 would, in our view, still not be properly deductible. The statute allows the elimination from "gross premiums" of both "return premiums" and "premiums and other consideration arising out of reinsurance ceded." Treasury Regulations Section 1.809-4(a)(1)(iii) states that "return premiums" shall include "amounts of premiums or other consideration returned to another life insurance company in respect of reinsurance ceded." (Emphasis added.) Clearly, as the ceding commission was the only payment made, and no reserves were transferred or deemed transferred, the commission cannot be deemed a "return" payment of any kind. As for the phrase "premiums and other consideration arising out of reinsurance ceded," the court interprets this as serving to reduce the premium income of the initial insurer (the reinsured) only. This is because premium payments would move only from the reinsured to the reinsurer. Any premiums paid back to the reinsured from the reinsurer would not be labeled a premium but a "return premium." The words "and other consideration," as part of this same phrase, should also be construed as consideration flowing only from the reinsurer to the reinsured.
 
 
 20
 Because no statutory basis exists for allowing the ceding commission to be deducted as a current expense, the court resorts to generally recognized tax principles to determine the proper treatment of this payment. These principles dictate that costs incurred in the acquisition of an economic interest with an income-producing life extending substantially beyond the taxable year may not be expensed but must be depreciated or amortized over the useful life of the interest acquired. Therefore the $450,000 payment from Dynamic to Ozark cannot be currently deducted by Dynamic, but must be amortized over the ten-year term during which Dynamic will share in the gain realized from the policies it has reinsured.
 
 
 21
 Reversed and remanded to the court below for further proceedings consistent with this opinion.
 
 
 
 *
 The Honorable Morris S. Arnold, United States District Judge for the Western District of Arkansas, sitting by designation
 
 
 [1]
 Taxpayer was formerly named Modern Security Life Insurance Company. However, effective September 30, 1983, taxpayer changed its name to Modern American Life Insurance Company and the Tax Court gave recognition to that fact by granting taxpayer's motion to correct the caption to reflect that change
 
 
 [2]
 "Modified coinsurance" is a form of indemnity reinsurance which differs from conventional coinsurance (another form of indemnity reinsurance) in that, under the latter, reserves are shifted to the reinsurer whereas, under the former, the reinsured or ceding company continues to maintain the reserves. Indemnity reinsurance differs from assumption reinsurance in that under the former the reinsurer indemnifies the reinsured company for losses, but does not become directly liable to policyholders, as it would in the case of assumption reinsurance
 
 
 [3]
 This is "consideration in respect of assuming liabilities under contracts not issued by the taxpayers," 26 U.S.C. Sec. 809(c)(1), and is always equal to reserve liability assumed. Beneficial Life, 79 T.C. at 645
 
 
 [4]
 Thus Treasury Regulation 1.461-1, entitled "General rule for taxable year of deduction," states that even a taxpayer using the cash receipts and disbursements method of accounting whose expenditure results in the creation of an asset having a useful life extending substantially beyond the close of the taxable year may not deduct the expenditure in full in the year of payment. 26 C.F.R. Sec. 1.461-1(a)(1)
 
 
 [5]
 Because the agreement under which taxpayer acquired an interest in the block of policies did not become effective until December 31, 1978, taxpayer is not entitled to a deduction for amortization in that year. See 26 C.F.R. Sec. 1.167(a)-10(b) to the effect that depreciation allowances must reflect only that portion of the year that the asset is actually in service. Taxpayer might arguably have been entitled to 1/365th of a year's amortization on the acquired interest equal to the one day taxpayer held that interest in 1978. Taxpayer, however, did not make that contention below
 
 
 [6]
 The statutory provisions governing the taxation of life insurance companies were substantially revised by Section 211 of the Deficit Reduction Act of 1984, Pub.L. No. 98-369, 98 Stat. 494, 720. That Act is effective for years beginning after December 31, 1983. Section 215 of the Deficit Reduction Act of 1984. All references to the Code contained herein refer to the Code as it appeared in 1978, the year here at issue
 
 
 [7]
 26 C.F.R. Sec. 1.809-4(a)(1)(iii) makes clear that the term "reinsurance ceded" means indemnity reinsurance rather than assumption reinsurance. That Regulation provides:
 For purposes of Section 809(c)(1) and this subparagraph, the term "reinsurance ceded" means an arrangement whereby the taxpayer (the reinsured) remains solely liable to the policyholder, whether all or only a portion of the risk has been transferred to the reinsurer. Such term includes indemnity reinsurance transactions but does not include assumption reinsurance transactions.
 
 
 [8]
 As on the cancellation of the policy, erroneously computed premiums, or the granting of an experience-rated refund, does not constitute a dividend. See Republic National Life Insurance Co. v. United States, 594 F.2d 530 (5th Cir.1979)