**MERIT LIFE INSURANCE COMPANY, Petitioner–Appellee,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent–Appellant.**

No. 87–2129.

United States Court of Appeals, Seventh Circuit.

Decided Aug. 11, 1988.

Nancy G. Morgan, Michael L. Paup, Chief, Asst. Atty. Gen., Appellate Section Tax Div., Washington, D.C., for respondent-appellant.

Bernard J. Schoenberg, San Francisco, Cal., for petitioner-appellee.

Before CUMMINGS and WOOD, Jr., Circuit Judges, and WILL, Senior District Judge.[*]

WILL, Senior District Judge.

This appeal involves the tax consequences of a general practice in the insurance industry called reinsurance. For any

---

[*] The Honorable Hubert L. Will, Senior Judge of the United States District Court for the Northern District of Illinois, Eastern Division, is sitting by designation.

number of reasons, insurance companies transfer all or part of the risk of a block of policies, under which they are the original insurer, to another insurance company, the reinsurer, in exchange for, among other things, a commission. The original insurer is known as the reinsured or ceding company and commissions paid by the reinsurer (or retained by the reinsured) are called ceding commissions. There are two general types of reinsurance: indemnity and assumption. At issue is the tax treatment for ceding commissions in indemnity reinsurance transactions.

In indemnity reinsurance, the ceding company does not relinquish any of its contractual interest in the policies it issued and remains directly liable to the policy holders. No relationship, contractual or otherwise, exists between the reinsurer and the policy holders. The ceding company pays the reinsurer a percentage of the premiums it received, upon issuance of the policies, proportional to the risk assumed by the reinsurer, which may be part or all of the total risk. The ceding company continues to pay claims and expenses and collect premiums, and pays the reinsurer a percentage of the future premiums again based on the risk transferred. In exchange, the reinsuring company reimburses (indemnifies) the ceding company for its share of the claims and expenses attributable to the risk reinsured and pays (or the ceding company retains) a ceding commission.

State laws and regulations require that an insurance company maintain a reserve, in cash or other assets, reflected as a liability for accounting purposes, representing the excess of the present value of future benefits payable under the life insurance policy over the present value of future net premiums received. The amount of the reserve changes over the life of a policy and the reserve may not be used for other

corporate purposes, such as distributing dividends to shareholders. However, the reserve may be invested to produce interest income. Indemnity reinsurance reduces the reserve required of the ceding company and increases the reserve required of the reinsurer, based on the proportion of the risk transferred to the reinsurer.[1]

In contrast, assumption reinsurance involves the purchase of a block of insurance policies by the reinsurer from the original insurer at which point the reinsurer assumes *all* of the original insurer's risks and obligations and becomes directly liable to the policy holders. The original insurer is then relieved of all liability under the policies and the policy holders are informed that henceforth they are insured by the reinsuring company and all future premiums are to be paid and claims made to the reinsurer. The reinsurer pays all future claims, commissions, expenses and taxes. In addition, the reinsurer assumes the entire reserve liability, thereby reducing ceding company's reserve liability. The purchase price is normally greater than but includes a commission to the selling company. The reinsurer simply purchases the policies and steps into the shoes of the ceding or selling company.

This case involves indemnity reinsurance. Merit Life Insurance Company ("Merit"), petitioner-appellee, an Indiana corporation, reinsured (agreed to indemnify) specified percentages, but not 100%, of five blocks of insurance policies, four of which were originally insured by American General Life Insurance Company of Delaware and one by American General Life Insurance Company of New York (both original insurers are hereinafter referred to as "American General"). American General paid "reinsurance premiums" to Merit, in an amount equal to the reserves Merit was required to carry on the policies less ceding commis-

---

1. The indemnity reinsurance described above is specifically known as conventional indemnity reinsurance. There is another type of indemnity reinsurance called modified coinsurance in which the ceding company continues to hold the entire reserve, but pays the reinsurer any investment income attributable to the assets supporting the reserve. The two companies, however, may consent, pursuant to 26 U.S.C. § 820(a), to have the tax consequences for each company be the same as if the reinsurer was maintaining the reserve in the case of conventional indemnity reinsurance. In effect, the reinsured maintains the reserve as a custodian on behalf of the reinsurer.

sions payable by Merit to American General.[2]

In addition, under the terms of the contracts, American General agreed to transfer a specified percentage of the gross premiums thereafter received on the reinsured policies and Merit agreed to pay American General for its share of commissions, premium taxes and other expenses incurred by American General. Finally, each contract provided that American General could recapture the reinsured policies on specific dates.

During the tax years in question, 1973–75, Merit claimed a tax loss, under 26 U.S.C. § 809(b) (section 809(b) of "the Code"),[3] on each of the indemnity reinsurance contracts because the reserves required and expenses incurred with respect to each contract exceeded the reinsurance premiums Merit received from American General. Specifically, Merit recognized as gross income the consideration (reinsurance premiums) deemed received from American General for assuming reserve liabilities, pursuant to section 809(c)(1), and deducted the same amount as the reserve liability, pursuant to section 809(d)(2). Merit also deducted the ceding commissions paid to (or retained by) American General from its gross premiums (gross income), pursuant to section 809(c)(1).[4] Since these amounts exceeded the gross premiums, Merit reported a loss for the transactions which it used to offset gains from other operations during those years.

The Commissioner of Internal Revenue ("Commissioner"), respondent-appellant, found deficiencies in Merit's declared federal income taxes based on Merit's *current* deduction of all the ceding commissions in the tax years in which it issued the indemnity reinsurance.[5] The Commissioner determined that the ceding commissions must be *amortized* over the anticipated lives of the reinsurance contracts (between 57 and 64 months) because, according to the Commissioner, the reinsurance contracts are intangible assets with useful lives of more than one year.[6]

Merit petitioned the United States Tax Court for a redetermination of the deficiencies. The case was submitted to the Tax Court without a trial and resolved based on the parties' stipulated facts and exhibits.

**2.** Two of the five reinsurance transactions at issue here are modified coinsurance transactions but Merit and American General employed section 820(a) for tax purposes. Consequently, the same tax result applies as if all five transactions were conventional indemnity reinsurance transactions, and, for convenience, we will refer to all five as indemnity reinsurance transactions.

One of the three conventional coinsurance agreements specified that American General agreed to pay Merit a reinsurance premium equal to the reserve liability on the block of policies and Merit in turn agreed to pay a ceding commission which American General offset against the reinsurance premium. The other two conventional coinsurance agreements only provide for the payment of a reinsurance premium. It is understood, however, that the reinsurance premium with respect to these two agreements represents the reserve liability less a ceding commission. Thus, all five transactions are treated as conventional indemnity reinsurance transactions which result in an actual money transfer from American General to Merit of a reinsurance premium less a ceding commission.

**3.** The years in issue are governed by the Internal Revenue Code of 1954 and the Life Insurance Company Income Tax Act of 1959, 26 U.S.C. §§ 801–820.

**4.** Section 809 provides the following in relevant part:

(c)(1) *Premiums.*—The gross amount of premiums and other consideration (including advance premiums, deposits, fees, assessments, and consideration in respect of assuming liabilities under contracts not issued by the taxpayer) on insurance and annuity contracts (including contracts supplementary thereto); *less return premiums, and premiums and other consideration arising out of reinsurance ceded....*

(d) *Deductions.*—For purposes of subsections (b)(1) and (2), there shall be allowed the following deductions:

(2) *Increase in certain reserves.*—The net increase in reserves which is required....

26 U.S.C. § 809 (emphasis added).

**5.** The Commissioner also found a deficiency in Merit's 1972 tax return. The issues with respect to 1972, however, were settled and are not before us.

**6.** Under the contracts between Merit and American General, American General had the right to reacquire the insurance business on a scheduled basis, ranging from 57 to 64 months after the issuance of the reinsurance.

The Tax Court, relying on its earlier opinion in *Beneficial Life Insurance Co. v. Commissioner*, 79 T.C. 627 (1982), reversed the Commissioner and held that in indemnity reinsurance arrangements the ceding commissions are deductible in full in the year in which the indemnity reinsurance is issued. *Merit Life Insurance Company v. Commissioner of Internal Revenue*, 52 T.C.M. (CCH) 638 (1987).

The Tax Court reaffirmed its view that an indemnity reinsurance transaction is not the purchase of an asset, but rather the sale of insurance by the reinsuring company to the ceding company. Accordingly, the Tax Court, as it had in *Beneficial Life*, viewed the ceding commissions paid by the reinsuring company (or retained by the reinsured) as analogous to currently deductible underwriting expenses such as agents' commissions paid by an original insurer on the issuance of a policy and reversed the Commissioner's disallowance of their deduction. The Commissioner appeals the Tax Court's ruling. We affirm.

### Standard of Review

■ As noted above, the Tax Court's decision was based on stipulated facts and exhibits. The court's holding that the ceding commissions in an indemnity reinsurance transaction are immediately deductible, based on uncontested facts, is a conclusion of law. Accordingly, we review the record *de novo*. *United Fire Insurance Company v. Commissioner of Internal Revenue*, 768 F.2d 164, 167 (7th Cir.1985). *See also Vukasovich, Inc. v. Commissioner of Internal Revenue*, 790 F.2d 1409, 1413 (9th Cir.1986) ("A general rule of special deference to the Tax Court is inappropriate although its judgments in its field of expertise are always accorded a presumption that they correctly apply the law."); 26 U.S.C. § 7482(a) (1982).

### Analysis

The Commissioner asked the Tax Court and now asks us to reconsider *Beneficial Life*. The Tax Court in *Beneficial Life* distinguished indemnity reinsurance from assumption reinsurance by deeming the former to be the "issuance of insurance," for which ceding commissions are immediately deductible, and the latter to be the "acquisition of an asset," for which ceding commissions must be amortized. 79 T.C. at 648. The Commissioner acknowledges that the distinction between assumption and indemnity reinsurance is significant to the policy holders and the ceding company but argues that it does not alter the reinsurer's position and should not create distinct tax consequences. According to the Commissioner, in both cases the reinsurer pays consideration (ceding commissions) for the right to receive future profits (reinsurance premiums) and, following the tax principle of matching expenses incurred (year by year) with income generated, *see Commissioner v. Idaho Power Co.*, 418 U.S. 1, 12, 94 S.Ct. 2757, 2764, 41 L.Ed.2d 535 (1974), the consideration must be amortized.

Merit argues that indemnity and assumption reinsurance are different and must be treated differently for tax purposes. It points out that the Code specifically treats both differently and the Tax Court recognized this in *Beneficial Life*. Although this distinction may not achieve a direct matching of income and expenses for tax purposes, the Code and treasury regulations provide for it. The same is true, it should be noted, as to the deduction of all commissions paid on the sale of insurance.

The court in *Beneficial Life* specifically rejected the Commissioner's argument that ceding commissions in indemnity reinsurance transactions must be amortized:

Respondent [Commissioner] cites to us numerous cases which required capitalization and amortization of acquisition expenses. However, such cases apply when an asset is acquired, not when insurance is sold. Although a reinsuring company does acquire an asset in a broad sense in the form of potential future profit, such is also true when an insurance company issues a single policy to an individual. Yet, the expenses related to that policy are currently deductible. While respondent's argument is appealing, it does not comport with how life insurance companies are taxed with re-

spect to insurance they issue. *In essence, respondent argues indemnity reinsurance should be taxed as is assumption reinsurance; yet the Code treats one as the issuance of insurance and one as acquisition of an asset. That makes all the difference.*

79 T.C. at 647–48 (emphasis added).

The Tax Court's reasoning in *Beneficial Life* is supported by the explicit language in section 809(c)(1) and the applicable treasury regulations. Section 809(c)(1) provides that an insurance company's gross income equals "the gross amount of premiums and other consideration ... less return premiums, and premiums and other consideration arising out of reinsurance ceded." *See* note 4 *supra.* Under section 809(c)(1), "reinsurance ceded" includes commissions from indemnity reinsurance transactions but not from assumption reinsurance transactions.

(iii) For purposes of section 809(c)(1) and this subparagraph, the term "reinsurance ceded" means an arrangement whereby the taxpayer (the reinsured) remains solely liable to the policyholder, whether all or only a portion of the risk has been transferred to the reinsurer. *Such term includes indemnity reinsurance transactions but does not include assumption reinsurance transactions.* See paragraph (a)(7)(ii) or section 1.809–5 for the definition of assumption reinsurance.

Treas.Reg. § 1.809–4(a)(1)(iii) (emphasis added).

(ii) For purposes of section 809(d)(7) and this subparagraph, the term "assumption reinsurance" means an arrangement whereby another person (the reinsurer) becomes solely liable to the policyholders on the contracts transferred by the taxpayer. *Such term does not include indemnity reinsurance* or reinsurance ceded (as defined in paragraph (a)(1)(iii) or section 1.809–4).

Treas.Reg. § 1.809–5(a)(7)(ii) (emphasis added). *See also* S.Rep. No. 291, 86th Cong., 1st Sess., at 54 (1959), *reprinted in* 1959 U.S.Code Cong. & Ad.News 1575; 1959–2 C.B. 770, 809. In contrast, ceding commissions paid in an assumption reinsurance transaction must be amortized:

(2)(ii) In connection with an assumption reinsurance ... transaction, a reinsurer shall ...

(B) Treat any amount paid to the reinsured for the purchase of such contracts, ..., as a deferred expense that may be amortized over the reasonably estimated life ... of the contracts reinsured and treat the portion of the expense so amortized in each taxable year as a deduction under section 809(d)(12) irrespective of the taxable year in which such amount was paid to the reinsured.

Treas.Reg. § 1.817–4(d)(2)(ii)(B).

The Commissioner contends that "reinsurance ceded" under section 809(c)(1) refers only to the reinsured or ceding company and not to the reinsurer. There is no provision, however, in section 809 of the applicable treasury regulations which even remotely suggests the Commissioner's interpretation or distinction. In addition, the term "return premiums" is defined in the regulations as follows:

(ii) The term "return premiums" means amounts returned or credited which are fixed by contract and do not depend on the experience of the company or the discretion of the management. Thus, such term includes amounts refunded due to policy cancellations or erroneously computed premiums. *Furthermore, amounts of premiums or other consideration returned to another life insurance company in respect of reinsurance ceded shall be included in return premiums. . . .*

Treas.Reg. § 1.809–4(a)(1)(ii) (emphasis added). Moreover, section 809(c)(1) provides for a *deduction* of ceding commissions from gross premiums earned. A ceding company *adds* ceding commissions to gross income. For the ceding company, ceding commissions represent income, not expenses (which are deducted). On the other hand, for the reinsuring company, indemnity reinsurance ceding commissions represent a current expenses which would normally be deductible as are commissions paid to a salesperson upon the sale of a

policy or when premiums are received in subsequent years. *Beneficial Life,* 79 T.C. at 646.

The Court of Appeals for the Fifth Circuit, in an opinion decided after the oral argument in our case, adopted the Commissioner's position that ceding commissions in indemnity reinsurance contracts must be amortized over the anticipated life of the reinsurance contract.[7] *Colonial American Life Insurance Company v. Commissioner,* 843 F.2d 201 (5th Cir.1988). The Fifth Circuit held that "without a clear difference in the statute [Code] for treatment of assumption reinsurance contracts and indemnity reinsurance contracts, we must apply [the] 'general' tax rule" which matches income and expenses such that expenses incurred to acquire a capital asset (in general, one with a useful life greater than one year) must be amortized over the expected life of the asset. 843 F.2d at 204. The Fifth Circuit embraced the Eighth Circuit's reasoning in *Modern American Life Insurance Co. v. Commissioner,* 818 F.2d 1386 (8th Cir.1987) and *Prairie States Life Insurance Co. v. United States,* 828 F.2d 1222 (8th Cir.1987).

The Court of Appeals for the Eighth Circuit in *Modern American* held that ceding commissions in modified coinsurance transactions, where no section 820 election is made, *see* note 1 *supra,* reflect acquisition costs of capital assets which must be amortized. The *Modern American* court, however, distinguished the contract at issue there from the modified coinsurance transactions at issue in *Beneficial Life,* in which section 820 elections were made. 818 F.2d at 1389. ("The facts of *Beneficial Life* are therefore not before us, and thus we express no opinion as to the correctness of the result in that case.").[8]

Merit argues that this distinction renders *Modern American* irrelevant to our case. In response, the Commissioner argues that,

notwithstanding the Eighth Circuit's statement to the contrary, a section 820 election has no bearing on the tax treatment of ceding commissions. Because a section 820 election was made in our case, we need not express an opinion on the distinction, if any, between modified indemnity reinsurance transactions where a section 820 election is not made and a modified indemnity reinsurance transaction where a section 820 election is made, with respect to the tax treatment of ceding commissions.

The Eighth Circuit in *Prairie States* was presented with conventional indemnity reinsurance contracts and the court found no distinction between modified indemnity reinsurance where no section 820 election is made (the facts in *Modern American*) and conventional reinsurance with respect to the tax treatment of ceding commissions. More importantly, the court equated conventional reinsurance with assumption reinsurance and reasoned that both involve the acquisition of a capital asset and because ceding commissions must be amortized in assumption (purchase) reinsurance transactions, ceding commissions must also be amortized in indemnity (non-purchase) reinsurance transactions.

> It makes no difference that in this transaction, unlike the one in *Modern American,* there is income from which taxpayer could in theory deduct the commission as a 'return premium.' The real issue, and the one decided in *Modern American* with respect to modified coinsurance, is whether Section 809(c)(1) should be read to permit taxpayer to treat as an immediate reduction of income during the taxable year the cost of acquiring in a conventional coinsurance arrangement an intangible asset 'with an income-producing life extending substantially beyond the taxable year.' [*Modern American Life Insurance Co. v. C.I.R.,* 830 F.2d 110] at 114 [ (8th Cir.1987) ]. We

presented there are the same as those in our case.

---

7. The contracts at issue in *Colonial American* involved both conventional and modified indemnity reinsurance transactions but, as in our case, the parties consented to the optional tax treatment under section 820(a) with respect to their modified indemnity reinsurance transactions and, thus, the reinsurance transactions

8. *Beneficial Life* also involved conventional indemnity reinsurance and assumption reinsurance transactions.

hold that Section 809(c)(1) should not be so read.

\* \* \* \* \* \*

[W]e do not believe that Congress intended to treat a ceding commission of the kind here at issue as a currently deductible underwriting expense analogous to an agent's commission paid by a direct insurer.... [T]he commission represents a one-time payment for the acquisition of an economic interest in a block of previously issued policies.

828 F.2d at 1233–34.

■ The Commissioner and the Courts of Appeals for the Fifth and Eighth Circuits fail to recognize the inherent distinctions between assumption and indemnity reinsurance transactions and the legal distinctions provided by the Code and the treasury regulations cited above. From the reinsuring company's perspective, indemnity reinsurance is not an acquisition of an intangible asset with a useful life of more than one year. By its nature, an indemnity reinsurance transaction is, from the perspective of the reinsurer, simply an indemnity or co-insurance arrangement, in substance, the sale of an insurance policy by the reinsurer to the ceding company. Economically, it is substantially the same as the sale of any other policy. In contrast, assumption reinsurance is by its nature the purchase of already issued insurance policies and the elimination of any participation or interest of the selling or ceding company.

The improper characterization of indemnity reinsurance transactions by the Fifth and Eighth Circuits and the Commissioner contributed to their misunderstanding and misinterpretation of the Code and application of the treasury regulations. In addition to embracing the Eighth Circuit's reasoning in *Modern American* and *Prairie States,* the Fifth Circuit in *Colonial American* also adopted the same rationale for indemnity reinsurance transactions as it had previously for assumption reinsurance transactions. 843 F.2d at 205, *citing Southwestern Life Ins. Co. v. United States,* 560 F.2d 627, 640–41 (5th Cir.1977),

*cert. denied,* 435 U.S. 995, 98 S.Ct. 1647, 56 L.Ed.2d 84 (1978).

Interestingly, the Fifth Circuit in *Southwestern Life* held that "equat[ing] the current deductibility of commissions paid in the life insurance industry to agents who put new policies on the books of the company with the payment of $9,800,000 for the acquisition of some 100,000 outstanding policies is not an apt comparison." 560 F.2d at 641. That reasoning is, of course, consistent with the distinctions made by the Code and recognized and applied in *Beneficial Life* to assumption reinsurance, the type of reinsurance before the court in *Southwestern Life.* It does not follow, however, that the cost of acquiring already existing insurance policies, as in the case of assumption reinsurance, should be equated with the expenses incurred in what amounts to the sale of new insurance policies, as in the case of indemnity reinsurance. Moreover, the Code, treasury regulations and legislative history recognize that indemnity reinsurance and assumption reinsurance are to be treated differently with respect to the tax treatment of ceding commissions paid.

The Eighth Circuit also equated indemnity reinsurance with assumption reinsurance, even after recognizing that the Code and treasury regulations distinguish between the two transactions. Indeed, after noting that assumption reinsurance is "explicitly governed by Treas.Reg. § 1.817–4(d)," the court in *Prairie States* claimed that section 1.817–4(d)(2)(iii) "specifically covers transactions *similar* to the one in this case, 'where the reinsured transfers to the reinsurer in connection with [an] *assumption reinsurance transaction* a net amount which is less than the increase in the reinsurer's reserves resulting from the transaction." 828 F.2d at 1230 (emphasis added). While there is some similarity between assumption and indemnity reinsurance, the differences substantially outweigh the similarities and to equate the tax treatment of the two transactions based on their similarities is improper, especially in light of the fact that section 1.817–4(d)(2)(iii) applies specifically only to assumption reinsurance.

The court in *Prairie States* later acknowledged that section 1.817–4(d)(2)(ii) "by its terms applies only to assumption reinsurance transactions. Moreover, the definition of assumption reinsurance, contained in Treas.Reg. § 1.809–5(a)(7)(ii), specifically excludes indemnity reinsurance." 828 F.2d at 1232. Notwithstanding, the court found that the "principles" behind the tax provisions for assumption reinsurance (illustrated in the treasury regulations), should also control the tax treatment of ceding commissions in indemnity reinsurance transactions. *Id.* We disagree.

The current deduction of agents' commissions by *direct insurers* is provided for in the Code. In addition, the legislative history surrounding the Deficit Reduction Act of 1984 ("DEFRA"), although not controlling, recognized and strengthened this provision.

> The change [DEFRA] from present law [1959 Act] was intended to reinforce the primacy of the Federal tax rules and not impose a new method of tax accounting on life insurance companies. Thus, for example, agents' commissions paid by direct insurers would continue to be treated as sales expenses and deductible when paid, as has been allowed historically (even though they arguably might be classified as acquisition expenses to be amortized).

H.R.Rep. No. 432, 98th Cong., 2d Sess., pt. 2, at 1428 (1984), *reprinted in* 1984 U.S. Code Cong. & Admin.News 697, 1073; Senate Comm. On Finance, S.Prt. No. 169 (Vol. I), 98th Cong., 2d Sess., at 555 (1984). Because substantively indemnity reinsurance is the sale of insurance by the reinsurer to the ceding company, it follows that, in addition to the explicit provisions of the Code and treasury regulations, the principles governing the sale of insurance, in the case of direct insurers, also apply to indemnity reinsurers.

Merit argues that reinsurance is just what it sounds like: insured insurance. Whether or not an insurance company sells insurance to an individual or to another insurance company, each involves the issuance of new policies and the transfer of a risk and, under the Code, the commission expenses incurred in either transaction, whether paid to insurance agents in the case of individual policies or to ceding companies in the case of reinsurance, are deductible in the year of their payment. The Commissioner does not dispute that commissions paid to agents in connection with the sale of individual insurance policies by an original insurer are currently deductible in the year of the transaction.

The Court of Appeals for the Ninth Circuit recently distinguished assumption reinsurance from indemnity reinsurance with respect to the tax treatment of ceding commissions. *Oxford Life Insurance Company v. United States,* 790 F.2d 1370 (9th Cir.1986). Although that case involved assumption reinsurance, the court emphasized its holding by making the following comparison between both reinsurance transactions:

> Assumption reinsurance transactions receive different treatment in the Tax Code from that accorded indemnity reinsurance transactions because of the transfer of assets. An assumption reinsurance transaction is treated as a sale of policies; an indemnity reinsurance transaction is the purchase of insurance protection [by] the reinsured. *Beneficial Life,* 79 T.C. at 645–46.

> \*    \*    \*    \*    \*    \*

> The exception created in the statute for 'reinsurance ceded' specifically refers to indemnity reinsurance. Treas.Reg. § 1.809–4(a)(1)(iii); S.Rep. No. 291, 86th Cong., 1st Sess. at 54 (1959–2 Cum.Bull. 809). Thus, indemnity reinsurers may subtract from income any consideration returned to the ceding company with respect to the reinsurance ceded. *Beneficial Life,* 79 T.C. at 646. . . . While the [treasury] regulation notes that the definition of return premiums is specifically broadened in the case of indemnity reinsurers, *see* Treas.Reg. §§ 1.809–4(a)(1)(ii) and (iii), assumption reinsurers, as noted earlier, receive different treatment in the tax code. *See Beneficial Life,* 79 T.C. at 646–47.

790 F.2d at 1376. In addition to those provisions of the Code cited above, other provisions draw distinctions between indemnity and assumption reinsurance. *See* 26 U.S.C. §§ 806,[9] and 809(d)(7).[10]

The Court of Appeals for the Second Circuit has affirmed the Tax Court's ruling concerning a life insurance company's deductions under section 809(d)(5) for increases in reserves for "certain nonparticipating contracts." *Cologne Life Reinsurance Co. v. Commissioner*, 80 T.C. 859 (1983), *aff'd by summary order*, 732 F.2d 141 (2nd Cir. 1984) (unpublished opinion). Although dicta, the Tax Court in *Cologne* began its discussion by distinguishing between assumption and indemnity reinsurance transactions. 80 T.C. at 862 ("[T]he issuance of indemnity life reinsurance is treated generally as the issuance of life insurance."), *citing Beneficial Life*, 79 T.C. at 647–48.

■ Congressional history supports the similar tax treatment for indemnity reinsurance and directly-written insurance contracts, with respect to the deduction of expenses (and consequently a dissimilar tax treatment than for assumption reinsurance):

> Modified coinsurance is a form of indemnity reinsurance (as contrasted to assumption reinsurance) to indemnify an insurer against a risk it has assumed.... Three forms of this indemnity reinsurance have been developed. The first of these, called coinsurance, calls for the premium with respect to the insurance reinsured to go to the reinsurer, with the result that *the reinsurer, with respect to this insurance, is treated substantially in the manner he would be if he had issued the insurance policy (or part thereof) directly*. Any expenses in-

curred by the initial insurer with respect to the policy are reimbursed by the reinsurer. This form of indemnity reinsurance presents few special tax problems.

S.Rep. No. 291, 86th Cong., 1st Sess., at 38–39 (1959), *reprinted in* 1959 U.S.Code Cong. & Admin.News 1575, 1959–2 C.B. 770, 797–798 (emphasis added). Had Merit acted as the original insurer with respect to the policies in these contracts, rather than as a reinsurer, it would have incurred an underwriting loss because the reserves required and expenses incurred generally exceeded the premiums received during the year the insurance was issued. Brief of *Amici Curiae* at 5.

In addition, legislative descriptions of recent revisions to the Code, although not controlling here, are indicative of the distinctions between indemnity and assumption reinsurance.

> Whereas an indemnity reinsurance contract describes a continuing insurance relationship between the ceding company and the reinsurer, an assumption reinsurance contract is considered a sale of a block of business.

General Explanation of the Revenue Provisions of the Deficit Reduction Act of 1984, prepared by the Staff of the Joint Committee on Taxation, at 633 (Dec. 31, 1984). This explanation is verbatim from a Technical Advice Memorandum prepared by the Commissioner just prior to the Commissioner's appeal in this case. Tech.Adv.Mem. 87–42–004 (June 30, 1987). *See* Brief of *Amici Curiae* at n. 13.

Finally, the Commissioner claims that generally accepted accounting principles ("GAAP") hold that ceding commissions in indemnity reinsurance transactions should

---

**9.** 26 U.S.C. § 806(a) provides in relevant part: ... if, during the taxable year, there is a change in life insurance reserves attributable to the transfer between the taxpayer and another person of liabilities under contracts taken into account in computing such reserves, then, ..., the means of such reserves, and the means of the assets, shall be appropriately adjusted, on a daily basis, to reflect the amounts involved in such transfer. This subsection shall not apply to reinsurance ceded to the taxpayer or to another person.

**10.** Section 809(d)(7) provides the following in relevant part:
(d) *Deductions.*—For purposes of subsections (b)(1) and (2), there shall be allowed the following deductions:
(7) *Assumption By Another Person Of Liabilities Under Insurance, Etc., Contracts.*—The consideration (other than consideration arising out of reinsurance ceded) in respect of the assumption by another person of liabilities under insurance and annuity contracts (including contracts supplementary thereto).

be amortized as an acquisition expense and, thus, tax accounting should employ the same treatment. Respondent–Appellant's Brief at n. 22.[11] The difficulty with that contention is that GAAP would only control the deduction of ceding commissions if the Commissioner's basic assumption were correct: that *indemnity reinsurance* transactions represent the acquisition of a capital asset. That assumption is, however, erroneous.

In addition, the Supreme Court has expressed a preference for the accounting rules and procedures of the National Association of Insurance Companies ("NAIC"). The Court has interpreted 26 U.S.C. § 818(a) as providing that the tax liability for insurance companies is to be computed consistent with the NAIC's rules except where "accrual accounting indicate[s] a contrary result, ..." *Commissioner v. Standard Life and Accident Insurance Company*, 433 U.S. 148, 159, 97 S.Ct. 2523, 2529, 53 L.Ed.2d 653 (1977).[12] Because generally accepted accounting principles (accrual accounting) do not control the tax treatment for ceding commissions in indemnity reinsurance transactions, we must consider the NAIC's rules. Both parties agree that Merit's current deduction of ceding commissions followed the accounting rules for life insurance companies established by the NAIC.

Allowing insurance companies to immediately deduct ceding commissions for indemnity reinsurance but not for assumption reinsurance reflects the inherent differences between the two transactions and the complexities of the insurance industry.

We realize that it may seem strange at first for the assumption reinsurance transaction and the indemnity reinsurance transactions at issue herein to have such different tax consequences when they are, at heart, so similar. An understanding of that difference must flow from the understanding of the complex and somewhat unique rules applicable to the insurance industry....

\* \* \* \* \* \*

... [R]eserves are deduction when set up and when added to; premiums are income as received; ... and, decreases in reserves give rise to income. Additionally, an insurance company may deduct currently expenses such as commissions, taxes, and underwriting expenses. It is within that framework that indemnity reinsurance, as the reinsurer's sale of insurance, falls. In essence, the allowance paid the ceding company is analogous to currently deductible underwriting expenses.

*Beneficial Life*, 79 T.C. at 646–47 (citation and footnote omitted).

If American General had withheld or deducted the ceding commissions from the reinsurance premiums prior to paying them to Merit, without specifically referring to "ceding commissions" in the agreements, the tax consequences would have been exactly the same as the Tax Court has held: Merit's taxable income would have been reduced by the ceding commissions in the year in which the reinsurance was issued. Merit's gross income would automatically have been reduced. Gross income reflects

---

**11.** Treas.Reg. § 1.461–1(a)(2) provides:
    (2) *Taxpayer using an accrual method.*—Under an accrual method of accounting, an expense is deductible for the taxable year in which all events have occurred which determine the fact of the liability and the amount thereof can be determined with reasonable accuracy. However, any expenditure which results in the creation of an asset having a useful life which extends substantially beyond the close of the taxable year may not be deductible, or may be deductible only in part, for the taxable year in which incurred.

**12.** 26 U.S.C. § 818(a) provides the following:
    (a) Method of Accounting.—All computations entering into the determination of the taxes imposed by this part shall be made—

(1) under an accrual method of accounting, or
(2) to the extent permitted under regulations prescribed by the Secretary or his delegate, under a combination of an accrual method of accounting with any other method permitted by this chapter (other than the cash receipts and disbursements method).
Except as provided in the preceding sentence, all such computations shall be made in a manner consistent with the manner required for purposes of the annual statement approved by the National Association of Insurance Commissioners.

actual consideration received and this would have been reduced by the withheld amounts, thus producing the same net loss. Merit would not have had to subtract ceding commissions from the reinsurance premiums it received. In fact, it appears that two of the five agreements were structured in this manner. *See* note 2 *supra.*

Alternatively, Merit claims that ceding commissions are deductible under sections 162 and 809(d)(11) as one of many "other deductions" or ordinary business expenses. The Tax Court in *Beneficial Life* noted that ceding commissions in indemnity reinsurance transactions are analogous to currently deductible underwriting expenses of a direct insurer. 79 T.C. at 647. Those deductions are made pursuant to section 809(d)(11).[13] Because we hold that ceding commissions are deductible from gross premiums under section 809(c)(1), we need not address Merit's alternative argument, although we agree with the Tax Court's analogy.

### Conclusion

In sum, we conclude that the Code, treasury regulations and legislative history support the petitioner's position and the Tax Court's holding that ceding commissions paid by a reinsuring company or retained by the reinsured company, in an indemnity reinsurance transaction or in a modified indemnity reinsurance transaction in which both insurance companies have consented to treat the transaction as a conventional indemnity reinsurance transaction pursuant to 26 U.S.C. § 820(a), are immediately deductible by the reinsurer in the year in which the reinsurance is issued.

The opinion of the Tax Court is

AFFIRMED.

---

13. Section 809(d)(11) provides the following in relevant part:

(d) *Deductions.*—For purposes of subsections (b)(1) and (2), there shall be allowed the following deductions:

(11) *Other Deductions.*— ..., all other deductions allowed under this subtitle for purposes of computing taxable income to the extent not allowed as deductions in computing investment yield.