118 F.3d 1563
 80 A.F.T.R.2d 97-5133, 97-2 USTC P 50,531
 GULF LIFE INSURANCE COMPANY, Plaintiff-Appellee,
v.
The UNITED STATES, Defendant-Appellant.
 No. 96-5138.
 United States Court of Appeals,
Federal Circuit.
 July 8, 1997.
 
 Glen H. Kanwit, Hopkins & Sutter, Chicago, IL, argued for plaintiff-appellee. With him on the brief were Richard Bromley and R. Lee Christie.
 Robert W. Metzler, Attorney, Tax Division, Department of Justice, of Washington, DC, argued for defendant-appellant. With him on the brief were Loretta C. Argrett, Assistant Attorney General, and David I. Pincus, Attorney.
 Before NEWMAN, MAYER, and MICHEL, Circuit Judges.
 Opinion for the court filed by Circuit Judge PAULINE NEWMAN. Dissenting opinion filed by Circuit Judge MICHEL.
 PAULINE NEWMAN, Circuit Judge.
 
 
 1
 This case concerns the placement of tax liability in connection with "participating" life insurance policies upon which indemnity reinsurance has been obtained. The policyholder receives premium rebates, called dividends, which vary with the insurer's interest earnings and thus provide the insurer with flexibility to accommodate varying investment proceeds. For the tax year 1977 the insurer, Gulf Life Insurance Company's predecessor company Life & Casualty Insurance Company of Tennessee (Taxpayer), obtained indemnity reinsurance of these rebates. The issue is whether the flow of reimbursement by reinsurance imparts tax liability to the insurer, or is correctly treated for tax purposes as flowing directly from the reinsurer to the policyholder.
 
 
 2
 The issue turns on whether the statutory accounting rules of the National Association of Insurance Commissioners (NAIC) apply, for in accordance with the NAIC rules the income statements of the primary insurer (called the ceding company) and the reinsurer are constructed as if the reinsurer, and not the ceding company, were the issuer of the policy. The government's position is that the NAIC statutory accounting rules do not apply, and therefore that the reimbursement of these rebates by the reinsurer must be included in the insurer's gross income. The Court of Federal Claims held[1] that the NAIC rules apply, whereby the rebates paid by Taxpayer to its policyholders, and reimbursed to Taxpayer by reinsurance, yielded no net taxable gain to Taxpayer for tax year 1977. On the government's appeal, we affirm the judgment of the Court of Federal Claims.
 
 DISCUSSION
 
 3
 * The Life Insurance Company Income Tax Act of 1959 is codified at §§ 801-820 of the Internal Revenue Code of 1954 as amended. Section 818(a) as in effect in 1977 required that all computations affecting income tax of life insurance companies be made under either an accrual or other permitted method of accounting and be consistent with NAIC accounting procedures:
 
 
 4
 Section 818. Accounting provisions.
 
 
 5
 (a) Method of accounting
 
 
 6
 All computations entering into the determination of the taxes imposed by this part shall be made--
 
 
 7
 (1) under an accrual method of accounting, or
 
 
 8
 (2) to the extent permitted under regulations prescribed by the Secretary, under a combination of an accrual method of accounting with any other method permitted by this chapter (other than the cash receipts and disbursements method).
 
 
 9
 Except as provided in the preceding sentence, all such computations shall be made in a manner consistent with the manner required for purposes of the annual statement approved by the National Association of Insurance Commissioners.
 
 
 10
 26 U.S.C. § 818(a). The Court of Federal Claims, citing precedent and legislative history, concluded that § 818(a) requires the use of NAIC accounting except for provisions specifically covered by the Code.
 
 
 11
 The legislative history explains that the preference for Code purposes is for NAIC accounting unless that method is inconsistent with the Code and the accrual accounting required by § 818(a):
 
 
 12
 To the extent not inconsistent with the provisions of the 1954 Code and an accrual method of accounting, all computations entering into the determination of taxes imposed by the new part I shall be made in a manner consistent with the manner required for purposes of the annual statement approved by the National Association of Insurance Commissioners.
 
 
 13
 S.Rep. No. 291, 86th Cong. (1959), reprinted in 1959 U.S.C.C.A.N. 1575, 1649. The Supreme Court has so held, in resolving various issues of the applicability of NAIC accounting. In Commissioner v. Standard Life & Accident Ins. Co., 433 U.S. 148, 97 S.Ct. 2523, 53 L.Ed.2d 653 (1977), the Court applied § 818(a) to invalidate a Treasury Regulation that was inconsistent with the NAIC rules; the Court explained that § 818(a) "establishes a preference for NAIC accounting methods." 433 U.S. at 161, 97 S.Ct. at 2531. In Colonial American Life Ins. Co. v. Commissioner, 491 U.S. 244, 109 S.Ct. 2408, 105 L.Ed.2d 199 (1989), the Court reaffirmed the general preference for using NAIC accounting unless the Code explicitly provided otherwise, but held that NAIC accounting did not determine the question of whether ceding commissions on indemnity reinsurance must be capitalized and amortized over the life of the agreement because there were "precise and careful substantive sections of the Code" on this specific question, and that this NAIC methodology was inconsistent with accrual accounting rules as required for application of § 818(a). 491 U.S. at 254-55, 109 S.Ct. at 2415-16.
 
 
 14
 The Court of Federal Claims pointed out that the issue of accounting for reinsurance reimbursement of premium rebates to policyholders was not the subject of precise substantive provisions of the Code, see Colonial American Life, 491 U.S. at 255, 109 S.Ct. at 2415-16, but was an accounting procedure within the scope of the NAIC statutory accounting and fully consistent with accrual accounting, invoking Code § 818(a). The court considered and rejected the government's argument that this NAIC accounting procedure is inconsistent with Code § 820. See United States v. Consumer Life Ins. Co., 430 U.S. 725, 97 S.Ct. 1440, 52 L.Ed.2d 4 (1977) (interpreting § 820 as not applicable to unearned premium reserves on reinsured life insurance policies). The court concluded that the NAIC statutory accounting was properly applied in this case because it "fill[ed] the gaps in the statutory treatment," in the words of Standard Life, 433 U.S. at 162 n. 26, 97 S.Ct. at 2531 n. 26.
 
 
 15
 The government argues that Taxpayer should have made an election under § 820 to treat the reinsurance premiums as received by the reinsurer and not by the reinsured, stating that by such election Taxpayer could acquire the right to rely on § 820(c)(5), which provides that "[t]he dividends to policyholders in respect of the policy reinsured shall be treated as paid by the reinsurer and not by the reinsured." The Court of Federal Claims held, correctly, that this election omission did not bar the applicability of Code § 809(c)(1), which provides that "premiums and other considerations arising out of reinsurance ceded" are excluded from the premium income of the ceding company, and is implemented by the NAIC accounting procedures.
 
 
 16
 The legislative history supports Taxpayer's position that § 820 is directed to a different purpose, viz. that of avoiding double taxation of investment income in some modified coinsurance situations, and does not override or contradict the provisions of § 809(c)(1). The Senate Report explained that the modified coinsurance policy was treated by the statute "generally as if it were a policy issued by the reinsurer instead of the initial insurer." S.Rep. No. 291, 86th Cong. (1959), reprinted in 1959 U.S.C.C.A.N. 1575, 1614.
 
 
 17
 Effective January 1, 1982, the law was changed. The Tax Equity and Fiscal Responsibility Act of 1982, Public Law No. 97-248, 96 Stat. 324 (TEFRA) is described as imposing the tax treatment that the government here seeks for 1977. The congressional summary of the relevant change explains:
 
 
 18
 The provisions relating to reimbursements were also revised so that policyholder dividends paid in connection with reinsured policies are treated as paid by the reinsured company rather than by the reinsurer.
 
 
 19
 H.R.Rep. No. 760, 97th Cong. (1982), reprinted in 1982 U.S.C.C.A.N. 1190, 1412. Although explanations of a subsequent enactment do not control the interpretation of a prior law, O'Gilvie v. United States, --- U.S. ----, ----, 117 S.Ct. 452, 458, 136 L.Ed.2d 454 (1996), a clearly stated legislative purpose to revise the law is informative when considering the argument that the prior law should be interpreted to be identical to the later revision.
 
 
 20
 The 1982 provisions were prospective only. We share the reasoning of Wickert v. Commissioner, 842 F.2d 1005, 1008 (8th Cir.1988), that it is unlikely that Congress would have made the revisions explicitly prospective if it were merely clarifying prior law instead of changing it. Thus the 1982 change of law reinforces the conclusion that NAIC accounting was properly applied to these prior reinsurance arrangements.
 
 B
 
 21
 We have considered the several additional arguments raised by the government. Tax planning is not a disapproved activity. The government stipulated that Taxpayer's reinsurance agreement was entered into for valid business purposes and had economic substance; Taxpayer in turn stipulated that tax planning was a principal business purpose. A "major motive" to reduce taxes is not grounds of illegality. See United States v. Cumberland Pub. Serv. Co., 338 U.S. 451, 455, 70 S.Ct. 280, 282, 94 L.Ed. 251 (1950). We discern no merit in this or the other peripheral arguments on which the government suggests reversal.[2]
 
 Conclusion
 
 22
 The Taxpayer properly treated these reinsurance reimbursements of policyholder premium rebates in accordance with the NAIC statutory accounting rules, whereby the payments are not includable in Taxpayer's net income for 1977 federal income tax purposes.
 
 
 23
 Costs to Gulf Life Insurance Co.
 
 
 24
 AFFIRMED.
 
 
 25
 MICHEL, Circuit Judge, dissenting.
 
 
 26
 I cannot accept the analysis of the majority or the authority cited by the trial court and therefore would reverse the summary judgment of the Court of Federal Claims in favor of the taxpayer in this suit for refund, because the indemnification by the reinsurer of the primary insurer's (taxpayer's) dividends to its policyholders must be considered gain from operations and, hence, income under 26 U.S.C. §§ 61(a) and 809(c)(3) (1964). The facts and background of this case are well-described in the opinion of the Court of Federal Claims. Gulf Life Ins. Co. v. United States, 35 Fed. Cl. 12 (1996).
 
 
 27
 Section 809(c) governs what is includible as income for an insurance company as "gain from operations." Section 809(c)(1) states that gain from operations includes "[t]he gross amount of premiums and other consideration ... less return premiums, and premiums and other consideration arising out of reinsurance ceded." With the background of this specific provision, section 809(c)(3) is a "catch-all" provision that states "[a]ll amounts, not included in computing investment yield and not includible under paragraph (1) or (2), which under this subtitle are includible in gross income" is income for purposes of section 809(c). Thus, if section 809(c)(1) does not apply to this situation, section 809(c)(3), through standard taxable income analysis, governs.
 
 
 28
 I agree with the Court of Federal Claims that dividend indemnifications are not "other consideration" under the first part of section 809(c)(1) ("[t]he gross amount of premiums and other consideration").[1] I further note that the dividend indemnifications are not "premiums and other consideration arising out of reinsurance ceded" under the second part of section 809(c)(1). Rather, this part of section 809(c)(1) refers to payments made by the primary insurance company to the reinsurance company. Cf. Colonial Am. Life Ins. Co. v. Commissioner, 491 U.S. 244, 259, 109 S.Ct. 2408, 2417, 105 L.Ed.2d 199 (1989) (noting that experience refunds paid by the reinsurer to the primary insurer are return premiums to the reinsurer and thus subtracted from the premiums received by the reinsurer in determining its section 809(c)(1) income). Thus, the question to be resolved is whether section 809(c)(3) includes these indemnifications as income. I believe that it does.
 
 
 29
 In holding that section 809(c)(3) did not include these indemnifications as income, the rationale of the Court of Federal Claims was:
 
 
 30
 [A]n expenditure made under a reimbursement arrangement with another party is in the nature of a loan or advance to the other party, which is nondeductible. The reimbursement is therefore in the nature of a repayment of borrowed funds, which is not gross income. Thus, the dividend reimbursements are not income to L & C under section 61(a) and are therefore not includible in L & C's gain from operations under § 809(c)(3).
 
 
 31
 35 Fed. Cl. at 19 (emphasis added).
 
 
 32
 I cannot agree with this conclusion. The payments under the reinsurance contract rather are "gain from operations." Under a modified indemnity reinsurance contract, such as we face here, the primary insurer is indemnified by the reinsurer after the primary insurer distributes dividends to its policyholders. These payments to the primary insurer are properly considered indemnifications, as the very name of the reinsurance contracts ("indemnity" contract) suggests, not "reimbursement," as characterized by the court below. Certainly nothing about them makes them in the nature of "a loan" or "repayment of borrowed funds," as stated by the court below. Dividends are not paid under the reinsurance contract, but rather under the primary insurer's contracts with its policyholders. Indeed, the reinsurer has no obligation to the policyholder and no control over whether, when, and what size dividends are distributed to them by the primary insurer. The indemnification is through a separate contract between different parties based on the business relationship of primary insurer and reinsurer, not insurer and policyholder.
 
 
 33
 The authority relied on by the court below concerned not the taxability of dividend indemnifications--with three parties and two contracts--but simple payments between two parties under a single, bilateral contract in a non-insurance context. Thus, Boccardo v. United States, 12 Cl.Ct. 184 (1987), the case primarily relied on by the Court of Federal Claims, can hardly apply. In Boccardo, an attorney advanced litigation costs to his client under an agreement between them that the client would "reimburse" the attorney for such costs after a favorable resolution of the case. The Claims Court held, quite correctly, that those advanced costs were in the nature of a loan and were therefore not business expenses and thus not deductible. There, the sole transaction was that the attorney loaned money to his client in exchange for a promise from the client to repay ("reimburse" for) those costs. The costs were the obligation of the client alone. Here, however, there were two separate and quite different agreements: one to grant dividends to policyholders at the discretion of the primary insurer, and another to have the reinsurer indemnify the primary insurer for those costs. The primary insurer was not paying the reinsurer's obligations in exchange for its promise of reimbursement. Rather, the primary insurer was paying its own (discretionary) obligations to its policyholders and being indemnified under a separate, wholly independent agreement with a third party, its reinsurer. In any event, neither Boccardo nor the tax court case on which it in turn relies, is precedent to us.
 
 
 34
 I also note that the primary insurer's right to take a deduction for dividends it distributes to policyholders, specifically authorized in 26 U.S.C. § 809(d)(3) (1964), albeit limited to $250,000 (plus an amount calculated based on the amount of investment, as opposed to underwriting, income), further supports the includibility as income of these payments that indemnify the insurer for the insurer's dividends. That is because of the fundamental tax principle that he who can take the deduction must report the corresponding receipts as income. That in the case of insurance companies the amount of the income may exceed the maximum allowable deduction ($250,000+), as here, changes nothing. The dividends, as obligations of the primary insurer, are normal business expenses of the primary insurer. Thus, under section 809(d)(3) the deduction properly belongs to the primary insurer and, in parallel, the indemnification for the cost of the dividends should be income to the primary insurer under section 809(c)(3). The indemnification payments are simply part of the primary insurer's business and thus constitute "gain from operations" which clearly makes them includible as gross income, just as the IRS found and the government counsel urged.
 
 
 35
 This analysis is not inconsistent with the availability of an election under section 820 to treat modified reinsurance agreements as conventional reinsurance agreements. Although there is legislative history to support the conclusion that the purpose of this election was to avoid a certain kind of double taxation problem not implicated here, the conclusion of the Court of Federal Claims that here, modified reinsurance is treated as conventional reinsurance, regardless of whether or not the section 820 election is taken, renders the election a redundancy. Cf. United States v. Consumer Life Ins. Co., 430 U.S. 725, 748, 97 S.Ct. 1440, 1452, 52 L.Ed.2d 4 (1977).
 
 
 36
 Finally, NAIC accounting practices do not govern. Section 818(a) gives the NAIC accounting provisions the "role of filling the gaps in the statutory treatment of accounting problems." Commissioner v. Standard Life & Accident Ins. Co., 433 U.S. 148, 162 n. 26, 97 S.Ct. 2523, 2531 n. 26, 53 L.Ed.2d 653 (1977). The NAIC practices cannot "trump ... the precise and careful substantive section of the Code." Colonial Am. Life Ins. Co. v. Commissioner, 491 U.S. 244, 255, 109 S.Ct. 2408, 2415-16, 105 L.Ed.2d 199 (1989). In Colonial, the Supreme Court held that "the fundamental question whether an expense is properly characterized as a capital outlay which has to be amortized or instead as an ordinary business expense subject to immediate deduction" is not governed by NAIC accounting provisions because "[i]t is inconceivable that Congress intended to delegate such a core policy determination to the NAIC." Likewise, it is inconceivable that Congress delegated the core policy determination of what constitutes income to the NAIC. This is not merely an accounting question, but rather one that is governed by section 61 (via section 809(c)(3)) and regulations and case law interpreting that statute.
 
 
 37
 In conclusion, because section 809(c)(1) does not apply, section 809(c)(3) does apply and, under section 61 principles, these dividend indemnifications are income. The deductibility of dividend payments under section 809(d)(3), and the existence of the section 820 election further support this conclusion. The 1982 amendment and the section 818 gap-filling role of NAIC accounting provisions do not compel a contrary result. I would therefore reverse the conclusion of the Court of Federal Claims and hold that the dividend indemnifications are income under section 809(c)(3).
 
 
 
 [1]
 Gulf Life Insurance Co. v. United States, 35 Fed. Cl. 12 (1996)
 
 
 [2]
 We observe the dissenting opinion's criticism of the portion of the opinion of the Court of Federal Claims wherein the court drew an analogy to the tax treatment of attorney advances to clients and other loan/reimbursement cases. This analogy was not the primary ground of the trial court's ruling, which was based on the statute. Thus we have not discussed this general issue of tax treatment of reimbursed business expenses
 
 
 [1]
 The Court of Federal Claims also relied on a 1982 amendment to section 809(c)(1) which specifically includes "the amount of dividends to policyholders reimbursed to the taxpayer by a reinsurer in respect of reinsured policies." The legislative history is unhelpful in determining whether this was intended to be a clarification or a revision of existing law. Thus, I do not believe the amendment gives any help in determining the scope of section 809(c)(1)