MICHEL, Circuit Judge,
dissenting.
I cannot accept the analysis of the majority or the authority cited by the trial court and therefore would reverse the summary judgment of the Court of Federal Claims in favor of the taxpayer in this suit for refund, because the indemnification by the reinsurer of the primary insurer’s (taxpayer’s) dividends to its policyholders must be considered gain from operations and, hence, income under 26 U.S.C. §§ 61(a) and 809(c)(3) (1964). The facts and background of this case are well-described in the opinion of the Court of Federal Claims. Gulf Life Ins. Co. v. United States, 35 Fed. Cl. 12 (1996).
Section 809(c) governs what is includible as income for an insurance company as “gain from operations.” Section 809(c)(1) states that gain from operations includes “[t]he gross amount of premiums and other consideration ... less return premiums, and premiums and other consideration arising out of reinsurance ceded.” With the background of this specific provision, section 809(c)(3) is a “catch-all” provision that states “[a]ll amounts, not included in computing investment yield and not includible under paragraph (1) or (2), which under this subtitle are includible in gross income” is income for purposes of section 809(c). Thus, if section 809(c)(1) does not apply to this situation, section 809(c)(3), through standard taxable income analysis, governs.
I agree with the Court of Federal Claims that dividend indemnifications are not “other consideration” under the first part of section 809(c)(1) (“[t]he gross amount of premiums and other consideration”).[1] I further note *1567 that the dividend indemnifications are not “premiums and other consideration arising out of reinsurance ceded” under the second part of section 809(c)(1). Rather, this part of section 809(c)(1) refers to payments made by the primary insurance company to the reinsurance company. Cf. Colonial Am. Life Ins. Co. v. Commissioner, 491 U.S. 244, 259, 109 S.Ct. 2408, 2417, 105 L.Ed.2d 199 (1989) (noting that experience refunds paid by the reinsurer to the primary insurer are return premiums to the reinsurer and thus subtracted from the premiums received by the rein-surer in determining its section 809(c)(1) income). Thus, the question to be resolved is whether section 809(c)(3) includes these indemnifications as income. I believe that it does.
In holding that section 809(c)(3) did not include these indemnifications as income, the rationale of the Court of Federal Claims was:
[A]n expenditure made under a reimbursement arrangement with another party is in the nature of a loan or advance to the other party, which is nondeductible. The reimbursement is therefore in the nature of a repayment of borrowed funds, which is not gross income. Thus, the dividend reimbursements are not income to L & C under section 61(a) and are therefore not includible in L & C’s gain from operations under § 809(c)(3).
35 Fed. Cl. at 19 (emphasis added).
I cannot agree with this conclusion. The payments under the reinsurance contract rather are “gain from operations.” Under a modified indemnity reinsurance contract, such as we face here, the primary insurer is indemnified by the reinsurer after the primary insurer distributes dividends to its policyholders. These payments to the primary insurer are properly considered indemnifications, as the very name of the reinsurance contracts (“indemnity” contract) suggests, not “reimbursement,” as characterized by the court below. Certainly nothing about them makes them in the nature of “a loan” or “repayment of borrowed funds,” as stated by the court below. Dividends are not paid under the reinsurance contract, but rather under the primary insurer’s contracts with its policyholders. Indeed, the reinsurer has no obligation to the policyholder and no control over whether, when, and what size dividends are distributed to them by the primary insurer. The indemnification is through a separate contract between different parties based on the business relationship of primary insurer and reinsurer, not insurer and policyholder.
The authority relied on by the court below concerned not the taxability of dividend indemnifications — with three parties and two contracts — but simple payments between two parties under a single, bilateral contract in a non-insurance context. Thus, Boccardo v. United States, 12 Cl.Ct. 184 (1987), the case primarily relied on by the Court of Federal Claims, can hardly apply. In Boccardo, an attorney advanced litigation costs to his client under an agreement between them that the client would “reimburse” the attorney for such costs after a favorable resolution of the case. The Claims Court held, quite correctly, that those advanced costs were in the nature of a loan and were therefore not business expenses and thus not deductible. There, the sole transaction was that the attorney loaned money to his client in exchange for a promise from the client to repay (“reimburse” for) those costs. The costs were the obligation of the client alone. Here, however, there were two separate and quite different agreements: one to grant dividends to policyholders at the discretion of the primary insurer, and another to have the reinsurer indemnify the primary insurer for those costs. The primary insurer was not paying the reinsurer’s obligations in exchange for its promise of reimbursement. Rather, the primary insurer was paying its own (discretionary) obligations to its policyholders and being indemnified under a separate, wholly independent agreement with a third party, its reinsurer. In any event, neither Boccardo nor the tax court case on which it in turn relies, is precedent to us.
*1568 I also note that the primary insurer’s right to take a deduction for dividends it distributes to policyholders, specifically authorized in 26 U.S.C. § 809(d)(3) (1964), albeit limited to $250,000 .(plus an amount calculated based on the amount of investment, as opposed to underwriting, income), further supports the includibility as income of these payments that indemnify the insurer for the insurer’s dividends. That is because of the fundamental tax principle that he who can take the deduction must report the corresponding receipts as income. That in the case of insurance companies the amount of the income may exceed the maximum allowable deduction ($250,000 + ), as here, changes nothing. The dividends, as obligations of the primary insurer, are normal business expenses of the primary insurer. Thus, under section 809(d)(3) the deduction properly belongs to the primary insurer and, in parallel, the indemnification for the cost of the dividends should be income to the primary insurer under section 809(c)(3). The indemnification payments are simply part of the primary insurer’s business and thus constitute “gain from operations” which clearly makes them includible as gross income, just as the IRS found and the government counsel urged.
This analysis is not inconsistent with the availability of an election under section 820 to treat modified reinsurance agreements as conventional reinsurance agreements. Although there is legislative history to support the conclusion that the purpose of this election was to avoid a certain kind of double taxation problem not implicated here, the conclusion of the Court of Federal Claims that here, modified reinsurance is treated as conventional reinsurance, regardless of whether or not the section 820 election is taken, renders the election a redundancy. Cf United States v. Consumer Life Ins. Co., 430 U.S. 725, 748, 97 S.Ct. 1440, 1452, 52 L.Ed.2d 4 (1977).
Finally, NAIC accounting practices do not govern. Section 818(a) gives the NAIC accounting provisions the “role of filling the gaps in the statutory treatment of accounting problems.” Commissioner v. Standard Life & Accident Ins. Co., 433 U.S. 148, 162 n. 26, 97 S.Ct. 2523, 2531 n. 26, 53 L.Ed.2d 653 (1977). The NAIC practices cannot “trump ... the precise and careful substantive section of the Code.” Colonial Am. Life Ins. Co. v. Commissioner, 491 U.S. 244, 255, 109 S.Ct. 2408, 2415-16, 105 L.Ed.2d 199 (1989). In Colonial, the Supreme Court held that “the fundamental question whether an expense is properly characterized as a capital outlay which has to be amortized or instead as an ordinary business expense subject to immediate deduction” is not governed by NAIC accounting provisions because “[i]t is inconceivable that Congress intended to delegate such a core policy determination to the NAIC.” Likewise, it is inconceivable that Congress delegated the core policy determination of what constitutes income to the NAIC. This is not merely an accounting question, but rather one that is governed by section 61 (via section 809(c)(3)) and regulations and case law interpreting that statute.
In conclusion, because section 809(c)(1) does not apply, section 809(c)(3) does apply and, under section 61 principles, these dividend indemnifications are income. The deductibility of dividend payments under section 809(d)(3), and the existence of the section 820 election further support this conclusion. The 1982 amendment and the section 818 gap-filling role of NAIC accounting provisions do not compel a contrary result. I would therefore reverse the conclusion of the Court of Federal Claims and hold that the dividend indemnifications are income under section 809(c)(3).

. The Court of Federal Claims also relied on a 1982 amendment to section 809(c)(1) which spe *1567 cifically includes "the amount of dividends to policyholders reimbursed to the taxpayer by a reinsurer in respect of reinsured policies.” The legislative history is unhelpful in determining whether this was intended to be a clarification or a revision of existing law. Thus, I do not believe the amendment gives any help in determining the scope of section 809(c)(1).