JOHN C. AND ELIZABETH L. KRIZER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Krizer v. Commissioner
Docket No. 28194-89
United States Tax Court
T.C. Memo 1991-638; 1991 Tax Ct. Memo LEXIS 686; 62 T.C.M. (CCH) 1598; T.C.M. (RIA) 91638; December 23, 1991, Filed *686 Decision will be entered for the respondent.
R. Dow Bonnell, for the petitioners. Donald E. Edwards, and Nancy S. Vosar, for the respondent. COUVILLION, Special Trial Judge. COUVILLION
MEMORANDUM OPINION This case was heard pursuant to section 7443A(b)(3) [1] and Rule 180 et seq. In a notice of deficiency, respondent determined for 1985 an addition to tax under section 6661(a) in the amount of $ 4,338 for substantial understatement of income tax. Prior to issuance of the notice of deficiency, petitioners agreed to an income tax deficiency of $ 17,911 for 1985. Of this deficiency, respondent determined, as set out in the notice of deficiency, that $ 17,351 was an understatement of tax subject to the addition under section 6661(a). Petitioners disagree with this determination, and, accordingly, the addition to tax under section 6661(a) *687 is the sole issue in this case. Some of the facts were stipulated, and such facts, with the attached exhibits, are made part hereof by reference. At the time the petition was filed, petitioners' legal residence was Oklahoma City, Oklahoma. On their joint Federal income tax return for 1985, petitioners reported income tax due of $ 5,631. The deficiency of $ 17,911 was determined by respondent's adjustment of $ 47,474 to petitioners' income for 1985. This consisted of $ 1,974 unreported constructive dividend income, and the disallowance of $ 45,500 claimed as trade or business expenses on Schedule C of petitioners' 1985 return. The section 6661(a) addition to tax relates to the $ 45,500 expenses which were disallowed. Respondent, however, allowed petitioners, and petitioners agreed to, an amortization of the $ 45,500 over a period of 5 years under the theory that petitioners had purchased a "future income stream." The dispute arises over a contract petitioners entered into, sometime during 1985, with a corporation, Pre-Paid Legal Services, Inc. (Pre-Paid Legal), which contract petitioners contend constituted a reinsurance agreement. Accordingly, petitioners contend that payments *688 by them under this contract to Pre-Paid Legal constituted "ceding commissions" which were deductible as trade or business expenses. Pre-Paid Legal was engaged in the business of selling insurance contracts for prepaid legal services. In the agreement with Pre-Paid Legal, petitioners agreed generally to assume liability for an unspecified number of insurance contracts, for which petitioners paid $ 50,000 cash to Pre-Paid Legal on December 23, 1985. [2] The contract petitioners entered into is not labeled or identified as a reinsurance contract. The contract was effective January 1, 1985, through December 31, 1990. Beginning January 1, 1986, petitioners assumed liability on the prepaid legal services contracts for (a) all claims, (b) administrative expenses not to exceed 30 percent of gross premium income, and (c) renewal commission expense not to exceed 25 percent of gross premium income. Beginning January 1, 1986, all premiums paid by policyholders would go to petitioners. Petitioners' contract with Pre-Paid Legal did not indicate whether it was an "assumption" or an "indemnity" reinsurance agreement. *689 On Schedule C of their 1985 Federal income tax return, petitioners claimed $ 45,000 of the $ 50,000 paid to Pre-Paid Legal as "ceding commission" expenses and $ 5,000 as legal expenses. They reported no gross income. Both items were disallowed by respondent and conceded by petitioners. At trial, Frank Jaques, an attorney who was general counsel and a member of the board of directors of Pre-Paid Legal and also the second largest shareholder of Pre-Paid Legal in 1985, testified that he advised petitioners, who were also his clients, concerning the agreement with Pre-Paid Legal. Mr. Jaques prepared the agreements petitioners and others, including himself, entered into with Pre-Paid Legal. Mr. Jaques did not testify as an expert witness. He had been a practicing attorney in Oklahoma since 1961 and described his law practice as "general practice of law, basically civil law." In response to a question concerning his familiarity with the Internal Revenue Code, Mr. Jaques replied, "I don't think anyone is familiar with it, but I know what it is." When asked if he gave tax advice to clients, Mr. Jaques testified, "I advise them to see their CPAs, but yes, I do independent research on *690 taxes, and I did independent research in this area." He went on to describe his research with respect to the Pre-Paid Legal transactions involving petitioners and others as follows: I researched the Research Institute of America and found a citation that said that these ceding commissions, or these commissions -- this arrangement would be deductible in the year that the money was paid. I researched the Internal Revenue Service regulations and found regulations that indicated that an individual could do this, and that -- I researched Oklahoma law to determine -- and determined -- and the Internal Revenue Code -- and determined that an individual could be an insurer or reinsurer in both -- under both Oklahoma law and under the Internal Revenue Service Code.
Mr. Jaques testified that, as a result of his own research, and his review of an opinion by a certified public accounting firm which concluded that amounts paid would be currently deductible, he determined that the amounts paid by petitioners under the agreement would be deductible in the year paid. He further testified that he informed petitioners of his opinion and further advised them: I explained to them that also, *691 in my opinion, that the likelihood would be that there would be an Internal Revenue Service audit of this. I thought that the Internal Revenue Service would agree with us. I explained to them there were court cases which agreed with us, and I explained to them that if there -- that nobody knows what the -- that certainly I don't pretend to know what the court is going to decide in any case. * * * But, in my opinion, it was my opinion that the deduction would be allowed. If it was not to be allowed and there was an audit, it was my opinion that if it were not allowed, the worst that could happen is there would be interest charged and a deficiency of 10 percent would be assessed -- penalties of 10 percent would be assessed. I thought that was the worst possible scenario at the time in 1985, and in '84.
Neither Mr. Jaques in his testimony at trial, nor petitioners in their brief, identified the cases or regulations to which Mr. Jaques referred in his testimony. A one-page accounting firm opinion, presumably the one which Mr. Jaques reviewed in the course of his consideration of the matter, is in evidence. [3] No authority is cited in the accountant's opinion for the conclusion *692 that amounts paid by persons in petitioners' position under contracts with Pre-Paid Legal would be deductible when paid. Mr. Jaques did not prepare a formal legal opinion for petitioners. Section 6661 provides for an addition to tax in the amount of 25 percent of the amount of any underpayment attributable to a substantial understatement of income tax. Section 6661(a); Pallottini v. Commissioner, 90 T.C. 498 (1988). An understatement is substantial if it exceeds the greater of 10 percent of *693 the correct tax or $ 5,000. Section 6661(b)(1)(A). Section 6661(b)(2)(B) provides: (B) Reduction for understatement due to position of taxpayer or disclosed item. -- The amount of the understatement under subparagraph (A) shall be reduced by that portion of the understatement which is attributable to -- (i) the tax treatment of any item by the taxpayer if there is or was substantial authority for such treatment, or (ii) any item with respect to which the relevant facts affecting the item's tax treatment are adequately disclosed in the return or in a statement attached to the return.
Petitioners argue that: (1) They had substantial authority for the position taken on their return; and (2) respondent's determination not to waive the addition to tax under section 6661(c) was an abuse of discretion. Petitioners bear the burden of showing respondent's determination to be incorrect. Rule 142(a). The first inquiry is whether petitioners established that there was substantial authority for the tax treatment of the item involved. Petitioners assert that the $ 45,000 deduction represents ceding commissions or a reinsurance fee paid pursuant to a ceding or reinsurance contract *694 and argue that they are entitled to deduct such amounts pursuant to section 809(c)(1) or section 832(c). Petitioners contend that they are "reinsurers" in the transaction with Pre-Paid Legal and rely on the definition of "person" found in section 7701(a)(1) to support their argument that they, as individual taxpayers, qualified as a "reinsurer" as that term is used in section 1.809-5(a)(7)(ii), Income Tax Regs.[4] The essence of petitioners' argument is that an individual may be a reinsurer entitled to deduct ceding commissions because the regulations refer to a reinsurer as a "person," a term defined elsewhere in the code to include individuals. *695 Respondent, on the other hand, contends that, regardless of whether an individual may be a reinsurer, petitioners' reliance on the provisions of subchapter L (sections 801 through 844) is misplaced because petitioners have not established that they qualify as an insurance company for purposes of subchapter L. Petitioners' reliance solely on the definition of "person" is insufficient to establish their entitlement to deductions under section 809(c)(1) or 832(c) and the regulations thereunder. The subchapter L sections relied upon by petitioners are applicable only to insurance companies. Such sections allow deductions from insurance company income in calculation of the income taxes imposed in section 801(a) upon life insurance companies and section 831(a) upon insurance companies other than life or mutual insurance companies. The initial element to be established by petitioners, therefore, in showing their entitlement to deductions under sections 809(c)(1) or 832(c) is whether the provisions of subchapter L are applicable to petitioners on the facts of this case. In other words, petitioners must establish that they qualify as an insurance company under subchapter L. "Insurance *696 company" is not defined in the Internal Revenue Code of 1954, but section 1.801-3(a)(1), Income Tax Regs., defines the term for sections 801 through 819, inclusive, (pertaining to life insurance companies) as follows: (a) * * * (1) The term "insurance company" means a company whose primary and predominant business activity during the taxable year is the issuing of insurance or annuity contracts or the reinsuring of risks underwritten by insurance companies. * * *
This definition is incorporated by sections 1.821-4(a)(1) and 1.831-3(a), Income Tax Regs., for purposes of sections 821 and 826 (pertaining to mutual insurance companies), and sections 831 and 832 (pertaining to other insurance companies), respectively, thus extending the definition of section 1.801-3(a)(1), Income Tax Regs., to all parts of subchapter L. Petitioners offered no evidence that their "primary and predominant business activity" during the taxable year was the issuing of insurance or annuity contracts or the reinsuring of risks underwritten by insurance companies. To the contrary, the evidence supports a finding that the reinsuring of risks underwritten by insurance companies was not petitioners' *697 primary and predominant business activity during 1985. Insurance companies are taxed as corporations under section 7701(a)(3), but the record reflects no corporate return filed by petitioners with respect to their reinsurance activity. Instead, petitioners reported the activity on Schedule C of their joint Federal income tax return, a return upon which they identified their occupations as "periodontist" and "office manager." Petitioners reported gross income of $ 121,200 from these two occupations. On this record, the Court concludes that petitioners have not established that the provisions of subchapter L, upon which they rely for support, are applicable to the deductions claimed on their return. No other authority for their position is cited by petitioners. "Deductions are a matter of legislative grace, and the taxpayer seeking the benefit of a deduction must show that every condition which Congress has seen fit to impose has been fully satisfied." Wisely v. United States, 893 F.2d 660, 666 (4th Cir. 1990) (citing Deputy v. duPont, 308 U.S. 488, 493, 84 L. Ed. 416, 60 S. Ct. 363 (1940)); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440, 78 L. Ed. 1348, 54 S. Ct. 788 (1934); *698 Estate of Ellingson v. Commissioner, 96 T.C. 760, 772 (1991). The Court holds that petitioners have not established substantial authority for the position taken on their return with respect to the deduction claimed for commissions. In the alternative, petitioners contend that they relied on the advice of professional tax advisors, that they acted in good faith and reasonably in claiming the deductions at issue here, and that respondent should have waived the section 6661 addition to tax under the authority provided for such waivers by section 6661(c). Section 6661(c) provides that the Secretary may waive all or any part of the addition to tax under section 6661(a) on a showing by the taxpayer that there was reasonable cause for the understatement or part thereof and that the taxpayer acted in good faith. The denial of a waiver by the Secretary is reviewable by this Court. Mailman v. Commissioner, 91 T.C. 1079, 1083 (1988). The question for the Court is not whether the Court would have decided differently; rather, the question is whether denial of the waiver was an abuse of discretion. Mailman v. Commissioner, supra at 1084. *699 The most important factor in determining reasonable cause and good faith within the intent of section 6661(c) is the extent of the taxpayer's efforts to properly report his tax liability. Section 1.6661-6(b), Income Tax Regs.; Mailman v. Commissioner, supra.
Although the record is silent regarding the nature and extent of evidence submitted to respondent by petitioners in support of their request for waiver of the addition to tax, the Court assumes that the evidence in this record was available to and considered by respondent. See Rogers v. Commissioner, T.C. Memo 1990-619. Petitioners' reliance on an attorney or accountant in the preparation of their return does not necessarily constitute a showing of reasonable cause and good faith; however, reliance on professional advice constitutes a showing of reasonable cause and good faith if, under all the circumstances, such reliance was reasonable and the taxpayer acted in good faith. Section 1.6661(b), Income Tax Regs.
Petitioners presented no evidence of the facts surrounding their reliance on professional advice other than Mr. Jaques' testimony. Mr. Jaques testified that he informed *700 petitioners of his opinion that the amounts paid under the agreement with Pre-Paid Legal were deductible in 1985, and also testified that petitioners were given the accounting firm summary opinion he reviewed; however, it does not appear that petitioners' 1985 tax return was prepared by that accounting firm. The record is silent as to what advice, if any, petitioners received from the certified public accountant who in fact prepared their return. Mr. Jaques did not prepare a legal opinion for petitioners and testified he advised petitioners that the matter would likely be audited and challenged by the Internal Revenue Service. Respondent contends that petitioners' reliance on Mr. Jaques could not constitute reasonable cause or good faith by petitioners because, as the second largest shareholder of Pre-Paid Legal, Mr. Jaques stood to profit from the transaction petitioners entered into with Pre-Paid Legal, a fact that respondent asserts "was undoubtedly known to petitioners." Mr. Jaques acknowledged that, as a result of the program in which petitioners and others participated, "I anticipated that the price of Pre-Paid stock would rise, and since all the participants in this program, *701 including myself, were Pre-Paid stockholders, it would inure to all of our benefits." Mr. Jaques stated that petitioners were fully aware of his legal representation of Pre-Paid Legal and were aware that he participated in the program himself. Essentially, respondent argues that Mr. Jaques was not an independent adviser under these circumstances, and, therefore, in considering petitioners' request for waiver of the addition to tax, petitioners' reliance on his advice was deemed inadequate to establish reasonable cause and good faith. On this record, the Court does not find respondent's decision not to waive the addition to tax to be an abuse of discretion. Accordingly, respondent's determination in the notice of deficiency is sustained. [5]
*702 Decision will be entered for the respondent.
Footnotes
1. All section references are to the Internal Revenue Code as amended and in effect for the year at issue. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. See Colonial American Life Insurance Co. v. Commissioner, 491 U.S. 244, 105 L. Ed. 2d 199, 109 S. Ct. 2408↩ (1989), for a discussion of reinsurance agreements.
3. The opinion, in the form of a letter, is attached to a copy of an agreement entered into by Mr. Jaques and Pre-Paid Legal in 1983, with terms similar to, but not identical with, those of petitioners' 1985 agreement with Pre-Paid Legal. The accounting firm letter refers to tax consequences for years 1983 through 1988, the years at issue in the Jaques agreement. It is not clear from the record whether another opinion was tendered by the accounting firm with respect to the 1985 agreement of petitioners.↩
4. Section 1.809-5(a)(7), Income Tax Regs., provides: (7) Assumption by another person of liabilities under insurance, etc., contracts. -- (i) The consideration * * * in respect of the assumption by another person of liabilities under insurance and annuity contracts * * * of the taxpayer. (ii) For purposes of section 809(d)(7) and this subparagraph, the term "assumption reinsurance" means an arrangement whereby another person (the reinsurer) becomes solely liable to the policyholders on the contracts transferred by the taxpayer. Such term does not include indemnity reinsurance or reinsurance ceded as defined in paragraph (a)(1)(iii) of section 1.809-4↩.
5. In the notice of deficiency, respondent determined that the understatement in question was due to items attributable to a tax shelter and that the taxpayers had not demonstrated that they reasonably believed that the tax treatment of the items on their return was more likely than not the proper tax treatment. Section 6661(b)(2)(C)(i)(II)↩ provides that, where an item in question is attributable to a tax shelter, that, in addition to establishing substantial authority for the tax treatment of the item, the taxpayer must also establish a reasonable belief that the tax treatment of such item was more likely than not the proper treatment. Petitioners presented no evidence to rebut the presumption that their contract with Pre-Paid Legal was a tax shelter, nor does the record support a finding that petitioners had a reasonable belief that their tax treatment of the deduction was more likely than not the proper tax treatment.